IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

TECH USA, INC.  *
8334 Veterans Highway
Millersville, MD 21108,  *
a Maryland Corporation
  *
Plaintiff

  * Civil No. AMD 08CV1677

  *

v.  *

  *
JACLYN PUCCINI
6201 Ashford Gables Drive  *
Dunwoody, GA 30338
  *
Defendant

*     *     *     *     *     *     *     *

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff TECH USA, INC. ("TECH USA" or "Plaintiff") by and

through its attorneys Allan P. Hillman of Shipman and Goodwin, LLP and Grover C. Outland,

III, General Counsel, TECH USA, INC., and sues Defendant Jaclyn Puccini ("Puccini"). TECH

USA sues Puccini for breach of contract (misappropriation of TECH USA company property);

for breach of contract (violation of obligations as to Confidential Information); and for trade

secret misappropriation in violation of the "Maryland Uniform Trade Secrets Act," Md. Comm.

Law Code Ann. §11-1201, et seq.

## JURISDICTION AND VENUE

1.     TECH USA is a Maryland corporation with its principal place of business at 8334

Veterans Highway, Millersville, MD 21108.

2.     TECH USA is a small to mid-size competitor in the nationwide and worldwide

market for providing customized staffing and consulting support to commercial and government

clients. It has expertise particularly in the areas of engineering, information technology, aerospace and government services, applications, infrastructure-telecom, scientific and professional services. Its competitors include companies ranging from those with revenues of many hundreds of millions of dollars or more to small start-ups. TECH USA develops close working relationships with its existing and prospective corporate (and other) customers in order better to understand and service their personnel and hiring needs, whether (a) via contract assignments of TECH USA personnel to the customer's (or its end-client's) projects, (b) by means of finding, screening and referring direct placements of new employees to join the customer's payroll, and/or (c) by participating directly in the customer's projects via subcontracting. TECH USA also develops close working relationships with its existing and prospective candidates for employment with such customers, whether via contract assignment or direct placement.

3.      Defendant Jaclyn Puccini is an individual and citizen of Georgia. Her last known domicile is 6201 Ashford Gables Drive, Dunwoody, GA  30338.

4.      On or about January 29, 2007, at the inception of her employment with Plaintiff as a recruiter in Plaintiff's Alpharetta office, Puccini and TECH USA, as employer, entered into a Confidentiality/Non-Competition Agreement (Overhead Employees) ("Confidentiality/Non-Competition Agreement"). As set forth below, this Agreement protects TECH USA's trade secrets, and also requires Puccini, among other things, to refrain from misappropriating or retaining TECH USA's Confidential Information and Company Property. A true and correct copy of the signed Confidentiality/Non-Competition Agreement between Puccini and Plaintiff is attached to this Complaint as **Exhibit A**.

2

5.      Plaintiff provided extensive specialized training to Puccini regarding recruiting in the staffing industry during the 16 months of her employment with TECH USA.  While an at-will employee, she received substantial trade secret information and Confidential Information from TECH USA, including without limitation customer names, hiring manager contact information, customer preferences on preferred staffing solutions, customers' pricing margins, and the names, contact information, skill sets availability and wage rates of contract employees and other personnel (such as candidates for employment) that TECH USA had developed over years with substantial effort and experience, that it has safeguarded, that was not public information, that was not readily available to its competitors, that would be very valuable to its competitors, and that would take them substantial time and expense to ascertain.

6.      This Court has jurisdiction under both counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with respect to the equitable claims alone, exclusive of interest and costs, exceeds the sum of $75,000. Jurisdiction and venue are proper in this judicial district because Puccini expressly agreed in paragraph 7 of the Confidentiality/Non-Competition Agreement with Plaintiff that she

> hereby consent[s], in any action brought in connection with any matters described in paragraph 5 of this Agreement [providing for injunctive relief where TECH USA has been caused immediate irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, and [she waives] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision."

7.      Paragraph 8 of the Confidentiality/Non-Competition Agreement generally requires "Disputes" between the parties to be resolved by arbitration pursuant to the then-prevailing Employment Dispute Resolution Rules of the American Arbitration ("AAA"), with an exception

for, among other things, actions for matters described in paragraph 5 of the Agreement (for example, claims for injunctive relief, as in the current case).

8.      Agreement ¶ 5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e., paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, etc.), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event." And, further, in the event of any such breach, Defendant agreed in ¶ 5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)." Agreement ¶ 5 further provides, that the injunction shall run for a period of twelve months from the date the injunction is granted, rather than twelve months from the date of Termination of Employment.

## THE CONTROVERSY

9.      On Wednesday morning, May 21, 2008, Puccini was observed by several employees of TECH USA's Alpharetta, Georgia office printing and copying large quantities of documents from TECH USA computers, printers, database, and networks (collectively "Systems") and taking such documents in manila folders from TECH USA's office to her car in the parking lot. When her supervisor returned to the office at approximately lunchtime after a morning meeting, she confronted Defendant Puccini near her car in the parking lot, pointed at several manila folders visible in the vehicle through a window, and demanded that Puccini return to the TECH USA office all of the company documents that she had printed/copied and taken. Puccini refused.

4

10.     On Thursday morning, May 22, 2008, Puccini's supervisor and another TECH USA employee met with Puccini off-site and issued her a Letter of Termination, a true and correct copy of which is attached to this Complaint as **Exhibit B**. The Termination letter referred to her at-will status but discussed her making of false entries the preceding day into the TECH USA database for tracking candidates, new hires, and existing employee, i.e., her own, productivity/performance. Her entry of fraudulent messages/information into that database is a violation of Agreement paragraph 12(b). Puccini was presented with, but refused to sign, the Letter of Termination, which was signed by her supervisor and a TECH USA recruiter who witnessed the meeting. Puccini did take with her a copy of that Letter of Termination at the conclusion of the meeting.

11.     The Letter of Termination presented to Puccini on May 22 also contained the following demand and warning just above where the parties were to sign:

> Please be further advised that you are to return forthwith to TECH USA any and all Company Property as described above and defined in the Agreement, including, without limitation any and all documents that you printed, copied, or forwarded from TECH USA's computers or Systems. Any attempt to retain Company Property and/or violation of the covenants, agreements, and provisions in the Agreement will be pursued to the fullest extent of the law and may subject you to civil liability, individually, for breach of the Agreement.

12.     Since the presentation to Puccini of the Letter of Termination on May 22, neither Puccini nor anyone acting on her behalf has returned to TECH USA any of the above documents or other Company Property.

13.     On information and belief, the stolen documents and other TECH USA Company Property in Puccini's possession contain trade secrets (as defined under Maryland law) and "Confidential Information," as defined in paragraph 1 of the Agreement.

14.     Under Confidentiality/Non-Competition Agreement ¶ 2 (Company Property), "upon Termination of Employment, [Jaclyn Puccini] agree[s] to immediately return to [TECH USA]

5

any and all property, records and documents [Jaclyn Puccini] obtained or developed in the course of such employment, including, without limitation, any lists or other documents, whether written or electronic, containing in whole or in part any of the Confidential Information or Trade Secrets."

15.    Under    paragraph    1    (Confidential    Information/Trade    Secrets)    of    the Confidentiality/Non-Competition Agreement between Puccini and Plaintiff, Puccini agreed that "during [her] employment by [TECH USA] and, after [her] termination, whether by [Jaclyn Puccini or TECH USA] with or without cause (collectively "Termination of Employment"), [Jaclyn Puccini] agree[s] that [she] shall not use for [her] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below)' or Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act)."    Under such paragraph 1, "Confidential Information" means inter alia, information

> not generally known by [TECH USA's] competitors or the general public concerning [TECH USA], including, but not limited to: (a) its financial affairs, sales, and marketing strategies, acquisition plans, pricing and costs; (b) any of the following information about corporations or other entities (collectively Customers) for whom [TECH USA] employs, recruits, supplies or otherwise finds or arranges employees: any such Customer's or Customer's names, addresses, telephone numbers, contact persons, staffing requirements, and/or margin tolerances regarding pricing; ... and (d) the names, addresses, telephone numbers, skill sets availability and wage rates of contract employees and/or any other personnel [TECH USA] employs, recruits, supplies, or otherwise finds or arranges for its Customers.

16.    Plaintiff's Chairman and CEO Thomas Howell risked his life savings in the start-up and acquisition of automotive franchises and other businesses in Maryland, and later risked a substantial part of his life savings in the start-up of TECH USA.    Mr. Howell knows from personal experience that obtaining a customer; finding, screening, and securing the candidates to

6

fill the positions needed by the customer; and then holding onto and satisfying that customer and those candidates (whether they work at the customer's site as TECH USA's contract employees, or on the customer's payroll as direct placements) in today's highly competitive marketplace is a very difficult, time-consuming and investment-intensive process, especially in the staffing industry in which Plaintiff TECH USA competes. The staffing company TECH USA, which Mr. Howell started in a single 1,000 square foot office in Millersville, Maryland in early 1998 has, in the past 10 years, grown to 13 offices in 10 states.

17.    From each of its offices, TECH USA expends a substantial amount of money, time, and other resources on its salespeople and recruiters, training them to research their territories and industries on which they focus, and to find and acquire candidates and develop customer relationships. Plaintiff also makes major investments in national sales conferences and specialized training meetings for recruiters and salespersons conferences which the overwhelming majority of its recruiters and/or account executives/salespersons attend. In training its salespeople and recruiters, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its 10-year history, affording the salespersons and recruiters access to specific data on existing customers and prospective customers, including but not limited to non-public contact information for those customers' hiring managers, as well as methods, techniques, and tools to price Plaintiff's services and the names, contact information, skill sets availability and wage rates of contract employees and other personnel (such as candidates for employment). Confidential Information and Trade Secrets that TECH USA salespeople and recruiters receive in order to perform their jobs include corporate and other customer names, street addresses, telephone numbers, hiring manager contact information (including hiring manager direct dial phone number and email address),

7

pricing margins used in past transactions, customer preferences on preferred staffing solutions --

whether they utilize contract assignments, direct/permanent placements, "temp to perm"

(otherwise known as "right to hire") arrangements, or other staffing solutions -- in securing new

personnel.    Specifically, the TECH USA recruiters receive and develop, as part of their job

duties, the names, contact information, skill sets availability and wage rates of contract

employees and other personnel (such as candidates for employment).

18.    All of the Confidential Information and Trade Secrets described in the preceding

paragraph constitutes information that TECH USA has developed over many years with

substantial effort and experience; Plaintiff has safeguarded that Confidential Information and

those Trade Secrets - - it was not public information, nor was it readily available to Plaintiff's

competitors.  In fact, the Confidential Information and Trade Secrets would be very valuable to

TECH USA's competitors, and it would take them substantial time and expense to ascertain.

While an element or two of the above Confidential Information and Trade Secrets (such as the

customer's corporate names and a switchboard phone number) may be ascertainable outside of

TECH USA's business, it is all of the elements (especially hiring manager contact information,

including hiring managers' and other contact persons' email addresses and direct dial phone

numbers), pricing margins, and customer preferences on preferred staffing solutions that

constitutes and provides the value, together with the names, contact information, skill sets

availability and wage rates of contract employees and other personnel (such as candidates for

employment).  None of that information is collectively known or accessible, outside of Plaintiff's

business, in any single public repository.

19.    Only those employees of Plaintiff involved in sales and recruiting know the above

Confidential Information and Trade Secrets, which TECH USA safeguards by taking such

measures as (i) requiring that sales and recruiting employees of Plaintiff who need access to Confidential Information and Trade Secrets in order to service TECH USA customers and accounts sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information on the TECH USA website; rather, the TECH USA Confidential Information and Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need to know," and access to the company database is via unique user name and password only, which are inactivated when an employee leaves the company. The database is also utilized to track the productivity/results obtained by those sales and recruiting employees.   The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate a business relationship with TECH USA customers and candidates in order to steal business from Plaintiff.

20.    As described above, Plaintiff expends months of effort and substantial funds (e.g. salaries of TECH USA salespersons and recruiters, their lunches and other meetings with customer representatives and candidates, and other reimbursable business expenses, in developing the Confidential Information and Trade Secrets.  Properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database.  Instead, it is developed over many months after numerous cold calls, lunches, and

other meetings, and includes, as well, Plaintiff's experience in actual transactions with customers and candidates in order to determine and collect pricing margins and customer preferences on staffing solutions provided, customers' pricing margins, as well as the names, contact information, skill sets availability and wage rates of contract employees and other personnel (such as candidates for employment) that TECH USA has developed over years of ongoing efforts and substantial expense.

## COUNT I

### Breach of Contract (Misappropriation of Company Property)

21.     Plaintiff TECH USA hereby incorporates paragraphs 1-20 as if each were fully set forth herein.

22.     On May 21, 2008, Defendant Puccini was observed by several of Plaintiff's employees printing and copying large quantities of documents from TECH USA Systems and taking such documents in manila folders to her car in the parking lot.   When her supervisor returned to the office after a morning meeting, she confronted Defendant Puccini near her car in the parking lot, pointed at several manila folders visible in the vehicle through a window, and demanded that Puccini return to the TECH USA office all of the company documents that she had printed/copied and taken.  Puccini refused.  On May 22, she took with her from the meeting with her supervisor and another TECH USA employee a Letter of Termination that, among other things, demanded she immediately return all of the TECH USA documents she illegally took, but no documents have been received from her to the date of this Complaint.  Any continued retention by Defendant Puccini of the Company Property of TECH USA (such as those large

quantities of documents) is a violation of her Confidentiality/Non-Competition Agreement, paragraph 2.

23.    Puccini's violations of the Company Property provisions in paragraph 2 of her Confidentiality/Non-Competition Agreement has caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against Defendant Puccini as follows:

(a)    Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 2 and 5 of the Confidentiality/Non-Competition Agreement, enjoining Defendant Jaclyn Puccini, her agents, servants and employees, and all those acting in concert with her, from violating the provisions of paragraph 2 of the Confidentiality/Non-Competition Agreement, and ordering the return of all Company Property in or under her (or their) possession or control to TECH USA (with no copies thereof to be retained by her, her agents, servants and employees) within five (5) days of this Court's Injunction order.

(b)    Entry of an Order requiring an accounting by Defendant Puccini to TECH USA of Defendant's sales and revenues (if any) as a result of or in connection with Defendant's aforesaid acts in violation of paragraph 2 of the Confidentiality/Non-Competition Agreement.

(c)    Entry of a judgment against Defendant Puccini for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

11

## COUNT II

### Breach of Contract (Confidential Information)

24.     Plaintiff TECH USA hereby incorporates paragraphs 1-23 of the Complaint as if each were fully set forth herein.

25.     On information and belief, Defendant Puccini has violated her obligation not to disclose, divulge or use Plaintiff's Confidential Information.  Any and all use of TECH USA's Confidential Information by Defendant Puccini for her own benefit (or for the benefit of a third party) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party is an activity in violation of paragraph 1 of her Confidentiality/Non-Competition Agreement with Plaintiff.

26.     Defendant Puccini's acts in violation of the Confidential Information provisions of the Confidentiality/Non-Competition Agreement that she signed with TECH USA have (on information and belief) caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement, enjoining Defendant Jaclyn Puccini her agents, servants and employees, and all those acting in concert with her, from violating the Confidential Information provisions of such Agreement.

(b)     Entry of an Order requiring an accounting by Defendant Jaclyn Puccini to TECH USA of Defendant's sales and revenues resulting from her unauthorized use of TECH USA's Confidential Information, as to which sales and revenues TECH USA may be entitled as a result of her aforesaid acts.

(c)     Entry of a judgment against Defendant Jaclyn Puccini for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs and expenses in connection with this proceeding pursuant to ¶ 9, the attorney fee provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

## COUNT III

### Statutory Trade Secret Misappropriation

27.     Plaintiff TECH USA hereby incorporates paragraphs 1-26 as if each were fully set forth herein.

28.     As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, Defendant Puccini received from Plaintiff in the course of her employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

29.     Among the Trade Secrets entrusted to the Defendant Puccini during her employment with Plaintiff was its customer list(s), including, without limitation, the identity of various TECH USA customers, as well as points of contact such as hiring managers at such customers (including without limitation such managers' email addresses and direct dial telephone numbers), such customers' pricing/margins for direct placements, as well as the names, contact information, skill sets availability and wage rates of contract employees and other personnel (such as candidates for employment) that TECH USA had developed over years with extensive efforts and at substantial expense, that it has safeguarded, that was not public information, that was not readily available to its competitors, that would be very valuable to its competitors, and that would take them substantial time and expense to ascertain. The Trade Secrets described

13

throughout this Count constitute information that TECH USA has developed over many years (with substantial effort and expenditures of resources) and that Plaintiff has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors. In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain.

30.     Only those of Plaintiff's employees involved in management, sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such measures as (i) requiring that those employees of Plaintiff who access Trade Secrets in order to service its customers and accounts sign the TECH USA-form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects Plaintiff's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information on the TECH USA website. Instead, Plaintiff's Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database is via unique user name and password only, which are inactivated when an employee leaves the company.

31.     Defendant Puccini expressly agreed in the first sentence of paragraph 5 of the Confidentiality/Non-Competition Agreement that she signed with TECH USA that any breach by Defendant of paragraphs 1-4 of that Agreement "will cause [TECH USA] immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event."

14

32.     On information and belief, Defendant Puccini has misappropriated TECH USA's Trade Secrets after Termination of Employment, for her own benefit, and/or for the benefit of a third party.  On information and belief, such acts of Defendant in misappropriating TECH USA's Trade Secrets have been willful and malicious, and Defendant Puccini have sought actively to conceal them.

33.     Plaintiff has suffered damage and, unless such misappropriation is enjoined, will continue to suffer damage as a result of Defendant Puccini's unlawful misappropriation of Plaintiff's Trade Secrets.  The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)     Entry of a Preliminary and Permanent Injunction against Defendant Jaclyn Puccini and her agents, servants and/or employees, and all those acting in concert with her, enjoining them pursuant to § 1202 of the Act and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement from using or disclosing TECH USA's Trade Secrets for her own benefit and from otherwise violating the Act and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement.

(b)     Entry of a judgment against Defendant Puccini pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because Defendant has engaged in a willful and malicious misappropriation.

(c)     Entry of a judgment against Defendant Puccini for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs and expenses in connection with the proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

15

     (d)     Entry of a judgment against Defendant Puccini pursuant to § 1204 of the Act

for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees

and court costs in connection with this proceeding), since Defendant has engaged in a willful and

malicious misappropriation.

Dated: June 25, 2008

Allan P. Hillman
U.S. District Court Bar No. 119
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT  06103-1919
(860) 251-5000
ahillman@goodwin.com


Grover C. Outland III
U.S. District Court Bar No. 24064
TECH USA, Inc.
8334 Veterans Highway
Millersville, MD 21108
(410) 987-1011
outland@techusa.net

511714 v.01